UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DELISA D. GRAFFIS,                    )
                     Plaintiff,        )
                                       )
          v.                           )          No.  4:14 CV 1486 SNLJ (JMB)
                                       )
CAROLYN W. COLVIN, Acting              )
Commissioner of Social Security,       )
                                       )
                     Defendant.        )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Delisa D. Graffis brings this action under 42 U.S.C. §405(g) for judicial review

of the final decision of the Commissioner of Social Security ("Commissioner") finding that

Plaintiff is no longer disabled and therefore discontinuing her disability insurance benefits

("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§401, *et seq.*  Plaintiff

has filed a brief in support of her complaint and the Commissioner has filed a brief in support of

her answer.   The Honorable Stephen N. Limbaugh, Jr., United States District Judge, referred this

matter to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b).  For

the reasons set forth below, the undersigned recommends that the decision of the Commissioner

should be affirmed.

## I.  Background and Procedural History

On October 15, 1996, the Social Security Administration ("SSA") granted Plaintiff's

application for DIB and found her disabled as of October 7, 1995, due to the medically

determinable impairment of chronic pulmonary insufficiency.  (Tr.[1] 17)  Following a 2009

---

[1]    References to "Tr." are to the administrative record filed by the Defendant.  (ECF Nos. 13-1 to 13-11).
Although the agency's original decision from 1996 finding Plaintiff disabled is not included in the record, the
Commissioner's decision at issue in this case shows that she was found disabled because her chronic pulmonary

continuing disability review,[2] Defendant found Plaintiff no longer disabled as of July 15, 2009, due to medical improvement related to her ability to work.[3] (Tr. 17-27, 60-63, 93-96) At the time her disability benefits ended, Plaintiff, who was born on April 26, 1963, was approximately 46 years of age. She had a high school education with some college course work and previous work experience as a cell phone programmer and a clerical worker. (Tr. 25, 37-39, 107, 226)

Plaintiff filed a timely request for reconsideration of the continuing disability review, and Defendant denied the request on December 9, 2009. (Tr. 97, 116-118) Plaintiff then filed a timely request for a hearing before an administrative law judge ("ALJ"). On February 23, 2011, following a hearing, the ALJ found Plaintiff no longer disabled as of July 15, 2009. (Tr. 67-75) On September 13, 2012, after consideration of the ALJ's decision, the Appeals Council remanded Plaintiff's case for additional proceedings. (Tr. 81-84) On April 24, 2013, following another hearing, the ALJ again found that Plaintiff was no longer disabled as of July 15, 2009. (Tr. 17-27) On June 24, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1-3) The ALJ's April 24, 2013 decision therefore stands as the final decision of the Commissioner.

## II. The Arguments of the Parties

In her request for reversal of the Commissioner's decision, the Plaintiff argues that:

(1) the ALJ, having discounted certain medical opinions of record, lacked sufficient medical evidence to permit an assessment of Plaintiff's residual functional capacity ("RFC");

(2) the ALJ failed to indicate with the necessary clarity whether Plaintiff's pulmonary disease constituted a severe impairment and whether any limitations flowed from that impairment; and

(3) the ALJ failed to properly assess Plaintiff's functional abilities in accordance with the

---

insufficiency met listing 3.02 (Tr. 22).
[2] There was also a continuing disability review in October, 2000 during which SSA determined that the claimant's disability was ongoing. (Tr. 86)

Commissioner's ruling requiring a "narrative bridge" linking the medical evidence of record to her RFC.

In response, Defendant contends that the ALJ properly evaluated Plaintiff's RFC on the basis of the medical evidence of record and was not required to rely upon medical source opinion evidence in making her determination. Defendant further responds that the ALJ's decision appropriately assessed the severity of Plaintiff's alleged pulmonary impairment. Finally, Defendant argues that, in assessing the RFC, the ALJ appropriately considered Plaintiff's impairments and tied them to her functional limitations, and thus conformed to the regulatory requirements for RFC determination.

For the reasons set forth below, it is recommended that the final decision of the Commissioner finding Plaintiff no longer disabled be affirmed.[4]

## III. Relevant Evidence Presented to the ALJ

The ALJ conducted two hearings in this matter. At the first, in November of 2010, the Plaintiff appeared in person, without an attorney. Although she initially signed a waiver of her right to have representation at the hearing, the hearing was continued after the Plaintiff reconsidered and decided that she wanted an attorney. (Tr. 139, 54) At the second hearing, on April 8, 2013, the Plaintiff appeared through her attorney. (Tr. 37)

*A. Plaintiff's Testimony at the November 30, 2010 Hearing (Tr. 46-59)*

At the hearing on November 30, 2010, after completing a Waiver of Right to Representation, Plaintiff appeared without counsel and testified in response to questions posed by the ALJ.

Plaintiff testified that she had not attended vocational school, or participated in a

---

[3] Plaintiff's benefits ceased effective September 15, 2009. (Tr. 17)
[4] The undersigned has reviewed the entirety of the administrative record in determining whether the Commissioner's adverse decision is supported by substantial evidence. The recitation of specific evidence in this

substance abuse treatment or rehabilitation program. The ALJ informed Plaintiff that there was a gap in the record of her medical treatment for the years 2000 through 2008. Plaintiff stated that Dr. John Wiedner, M.D., had been her primary care physician since approximately 1996. The ALJ then informed Plaintiff that Dr. Wiedner had produced only seven pages of records covering the 2000 through 2008 time period. The ALJ explained that Plaintiff would need to produce evidence of her treatment and disability for this time period. Plaintiff was given a copy of the medical record information that had been submitted on her behalf.

During questioning by the ALJ about the nature of her impairments, the Plaintiff appeared to become confused and reversed her earlier decision to proceed without an attorney. (Tr. 54) The ALJ agreed that the Plaintiff needed "legal help" and continued the hearing, giving the Plaintiff thirty days to find an attorney and reschedule the hearing. (Tr. 55, 58)

*B. Testimony of Vocational Expert at the April 8, 2013 Hearing (Tr. 39-45)*

Dr. Gerard Belchick, the vocational expert ("VE"), testified at the second hearing in response to questions posed by Plaintiff's counsel and the ALJ. Plaintiff's counsel first asked the VE to consider whether a hypothetical individual of the same age, education, and past work history as Plaintiff, who is limited to standing or walking no more than two hours out of eight and capable of sitting without limit, except that the individual would need to recline to nap on an unscheduled basis for approximately one hour in each work day, could perform either Plaintiff's past work or any other occupation. The VE stated that the individual would not be able to perform her past work or any other occupation as generally performed in the national economy.

Counsel next asked the VE to consider a hypothetical individual of the same age, education, and past work history as Plaintiff, who has no exertional limitations, but who is limited to simple, routine tasks and would be off task twenty per cent of the time, outside of

Memorandum and Order, however, is limited to only that relating to the issues raised by Plaintiff on this appeal.

normal breaks, with no ability to speed up or recover, resulting in a commensurate daily reduction in productivity of twenty percent. The VE responded that such an individual would be unable to perform either Plaintiff's past work or any other occupation as generally performed in the national economy.

Counsel then posed a third hypothetical positing an individual of the same age, education, and past work history as Plaintiff, limited to sedentary exertion (meaning standing or walking not more than two hours out of eight and lifting no more than ten pounds, occasionally), who must wash her hands at least fifty times during the workday. The VE responded that such an individual would be unable to perform either Plaintiff's past work or any other occupation as generally performed in the national economy.

The ALJ clarified that Plaintiff had past relevant work as a cell phone programmer and clerical worker. The ALJ then asked the VE to identify three jobs existing in significant numbers in the regional and national economies that could be performed by an individual with the Plaintiff's education and vocational background and an RFC for light, unskilled work.[5] The VE

---

[5]    In her written opinion, the ALJ describes Plaintiff's RFC slightly differently than it is posed in this hypothetical. In her written opinion, the ALJ found the Plaintiff had "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant is able to understand, remember and carry out at least simple instructions and non-detailed tasks." (Tr. 23) Although the Plaintiff has not raised any issue regarding this disparity, the undersigned notes the issue out of an abundance of caution. In this case, even if the Plaintiff had raised the issue, it would amount to no more than harmless error for several reasons.

First, this precise issue was addressed in Tomlin v. Colvin, 2015 WL 58934 (E.D.Mo. 2015). There, Plaintiff challenged the use of a hypothetical to a VE which included a limitation to "unskilled" work while the ALJ's written decision found plaintiff to have the RFC to "understand, remember and carry out at least simple instructions and non-detailed tasks." The plaintiff argued that the limitation in the hypothetical to the VE was impermissibly different from the limitation found in the written RFC. The Tomlin Court found that the "semantic" difference in wording between the hypothetical to the VE and the RFC as found in the written decision was harmless error. Id. at 17-18. Although this Court is not bound by unpublished opinions of a district court, the reasoning of the Tomlin court is sound, and this Court declines to depart from its disposition in an almost identical scenario.

Second, the hypothetical meets the standard set out in Cox v. Astrue, because the hypothetical captures the substantive consequences of the RFC and the substance of the limitations of the RFC. See 495 F.3d 614, 621 (8th Cir. 2007) (noting that a hypothetical to a VE must capture "the concrete consequences" of a claimant's deficiencies). The hypothetical meets this standard because the definition of unskilled work found at 20 CFR 404.1568(a) parallels that described in the RFC—it is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." That description of unskilled work tracks closely the phrasing of the RFC in the ALJ's written decision and therefore captures the concrete consequences of the RFC. In fact, the hypothetical is arguably more restrictive than the RFC the ALJ found. In such a situation, any discrepancy

identified three occupations: (1) housekeeping, DOT 310.474-010; with 2,000 jobs, regionally, and 900,000 jobs, nationally; (2) mail clerk, DOT 209.687-026, SVP2, with 2,100 jobs regionally and 132,000, nationally; and (3) kitchen helper, DOT 318.687-010, SVP2, with 4,300 jobs, regionally, and 512,000 jobs, nationally. The VE further testified that there was no conflict between his testimony regarding these occupations and the information set forth in the DOT.

### C. Plaintiff's Work History and Function Report

Plaintiff had past work as a cell phone programmer and clerical worker. Plaintiff's earnings record shows earned income for the years 1980 through 1995, with maximum earnings of $23,510.00. (Tr. 206-12) Her function report indicates that she lives with her husband and has two children. In a normal day, she dresses, attends to her personal hygiene, does laundry and perhaps some light cleaning, fixes simple meals, helps to care for a pet, watches television, and naps. Plaintiff also reported she drives, does some shopping, and handles money, but not often. (Tr. 280-87)

## IV. Medical Evidence (Tr. 334-460)

Plaintiff was hospitalized in 1995 for a pneumonia associated with a bout of cytomegalovirus ("CMV") hepatitis. The pneumonia progressed to adult respiratory distress syndrome and respiratory failure. A tracheotomy was performed, and Plaintiff was placed on a respirator. A Pulmonary Function Test ("PFT") performed around this time showed severe airway restriction. In the aftermath of her illness, Plaintiff continued to experience decreased

---

between the hypothetical and the RFC is harmless error. See Courtney v. Barnhart, 2005 WL 6117484 (E.D.Mo. 2005) (noting that even though a hypothetical must accurately describe a claimant's impairments, where a hypothetical is more restrictive than the RFC ultimately found, then the hypothetical is proper because "it is reasonable to conclude that, if a more limiting RFC yielded a substantial number of jobs in the economy, then a less restrictive RFC should produce a similar if not greater number of positions").

Third, the limitations found in the written RFC are consistent with the requirements for the jobs that the VE propounded in response to the arguably different hypothetical. Housekeeper, mail clerk, and kitchen helper all appear to require only that the claimant understand, remember, and carry out simple instructions and non-detailed tasks. The Dictionary of Occupational Titles ("DOT") supports this conclusion because the Specific Vocational Preparation ("SVP") to be able to do these jobs is the second lowest category—the jobs can be learned within a

pulmonary function, as measured by PFT, and this severe impairment formed the basis for the 1996 determination finding her disabled.  Specifically, Plaintiff's PFT results from this time period met the requirements of Listing 3.02B for a finding of disability due to pulmonary obstruction.  Following her illness, Plaintiff continued to report shortness of breath, right scapular discomfort when breathing deeply, and repeated viral infections of the throat, sinuses, and eyes.  (Tr. 392)  Plaintiff does not smoke cigarettes and reports that she has not consumed an alcoholic beverage in fifteen or twenty years.  (Tr. 414-16)

The medical records on file reflect that Plaintiff sought medical treatment on roughly four to five occasions between her 2000 disability review and early 2008.  The record also indicates that by at least 2009, Plaintiff consistently had normal chest and lung examinations as performed by Dr. Wiedner, her treating physician, and Michele Times, Dr. Wiedner's advanced nurse practitioner.  (Tr. 19-20, 507, 536)  From 2000 through the date of her 2008 disability review, Plaintiff had no difficulties related to her alleged shortness of breath or alleged pulmonary impairment that required emergency or inpatient medical treatment.  During this time period, Plaintiff was prescribed antibiotics on several occasions to treat upper respiratory infections. Chest x-rays performed in August and December of 2007 in response to Plaintiff's complaints of pain in her chest wall and a continuing, non-productive cough were normal and failed to show evidence of lung infiltrates or any active cardiac or pulmonary disease.  (Tr. 357-58)

A PFT completed on July 13, 2009 at St. John's Mercy Hospital measured Plaintiff's forced expiratory volume (FEV) at 1.53 and at 1.61, after use of a bronchodilator; her forced vital capacity ("FVC") was 2.03.  These values far exceeded the limits of 1.15 and 1.35, respectively, set forth in the relevant Listing 3.02B for a finding of presumptive disability, and they are consistent with the results of a person who is not disabled.

---

month, at the most.

Medical records confirm that Plaintiff is hypertensive, with a frequently measured systolic blood pressure in the 140 to 170 range, (Tr. 498, 507, 511), and has received a diagnosis of Type 2 diabetes mellitus. (Tr. 361, 424, 501, 520-21) Neither condition has required Plaintiff to seek emergency or inpatient care since 2000. Plaintiff takes prescription medication for both conditions but there is no evidence in the medical record of progression or complications attributable to these impairments. (Tr. 424)

Plaintiff stands approximately 5'2" tall and her weight has fluctuated between 237.5 and 261.8 lbs., resulting in an approximate maximum Body Mass Index ("BMI") of 47.8 (morbid obesity), during the period relevant to her disability review. (Tr. 511, 554, 557, 615) There is no evidence in the record that Plaintiff's obesity is accompanied by any of the frequently encountered complications of the condition such as: degenerative joint or disc disease, persistent reduced respiratory capacity, skin disorders, or coronary artery disease.

At the time of her 2009 disability determination review, Plaintiff was referred to Dr. Saul Silvermintz, M.D., for a consultative medical evaluation. (Tr. 421-31) Plaintiff reported concerns about shortness of breath, diabetes, and hypertension, weakness, poor circulation in her legs, and a tendency toward frequent illnesses that she attributed to a compromised immune system. Dr. Silvermintz noted the following areas of concern: a blood pressure of 147/ 89; increased body habitus, with a weight of 248 lbs.; tenderness around the right ankle; and a waddling gait, secondary to obesity. All other portions of the physical exam were unremarkable – Plaintiff's lungs were clear, her heart rhythm and rate were normal; there was no localizing tenderness or limitation of range of motion in her back or extremities, and no edema, or other evidence of decreased circulation. (Tr. 421-25) She could walk on the heels and toes of both feet, demonstrated good mobility and exhibited no sensory or motor deficits.

On May 12, 2009, Plaintiff was referred to Dr. Lynn Mades, Ph.D., a State consulting

psychologist, for a consultative evaluation of her alleged mental impairment. (Tr. 414-19) Dr. Mades reported that Plaintiff was mildly depressed, had a slightly restricted affect, mildly slowed motor activity, and a slightly decreased pace. (Id.) Dr. Mades also reported that Plaintiff exhibited personal hygiene within normal limits, was generally cooperative and pleasant, had normal speech in terms of rate and rhythm, and she appeared to Dr. Mades to be "spontaneous, coherent relevant, and logical." (Id. at 417) Dr. Mades also observed that Plaintiff did not exhibit tangents, flight of ideas, or perseveration; was oriented in all spheres; had intact memory for repetition of 5 out of 6 digits; identified four past presidents; recalled personal information like birthdate and social security number; and had an intact ability to perform simple calculations.

**V. Medical Opinion Evidence**

*A. Dr. Wiedner's Opinion (Tr. 486)*

Dr. Wiedner wrote that Plaintiff had been under his care for over ten years and had a history of CMV pneumonia, requiring ventilator support and tracheotomy; asthma; gastroesophageal reflux disease; Type 2 diabetes; hypertension; obesity; chronic low back pain; depression; anxiety disorder; and obsessive compulsive disorder. Dr. Wiedner further noted that Plaintiff recently had experienced significant arm pain and weakness attributable to unspecified connective tissue disease. Without further elaboration, Dr. Wiedner then opined that due to the aforementioned conditions Plaintiff was "medically disabled." (Tr. 486)

*B. Dr. McGraw's Opinion (Tr. 455-60)*

Dr. Dennis McGraw, D.O., a State medical consultant, reviewed Plaintiff's medical records and issued an opinion on July 22, 2009. Dr. McGraw described Plaintiff as incapacitated in light of her reported activities of daily living and noted that she alleged shortness of breath on walking twenty feet. Dr. McGraw observed that she had required no form of pulmonary care or

medication since 2000. He also observed that her July 13, 2009 PFT showed that her lung function exceeded the required severity for the relevant Listing despite "suboptimal, inconsistent" efforts on her part, as evidenced by the spirometry tracings. (Tr. 459) Dr. McGraw also observed that the notes from Plaintiff's primary care physician indicated that she regularly denied shortness of breath, and that when she went to the emergency room in January of 2009 for acute bronchitis her oxygen saturation had been 97-98 percent. (Id.) Dr. McGraw also noted that Plaintiff's hypertension and diabetes were well controlled with no evidence of end organ damage. (Tr. 456)

Dr. McGraw opined that, if Plaintiff was in fact as impaired as she had claimed at the time of the 2000 disability review comparison point decision ("CPD"), she had made significant medical improvement and presently appeared to function quite normally. Dr. McGraw further opined that Plaintiff's continued allegation of "debility" due to pulmonary problems was "totally lacking in credibility." (Tr. 459) Dr. McGraw further opined that Plaintiff could perform a full range of medium work,[6] in that she could occasionally lift or carry fifty pounds; frequently lift or carry twenty-five pounds; stand, walk, or sit for six hours in an eight-hour day; and had unlimited ability to push and pull. Finally, Dr. McGraw stated that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations.

### C. Dr. Muckerman-McCall's Opinion (Tr. 472-77)

Dr. Donna Muckerman-McCall, D.O., a State medical consultant, also reviewed Plaintiff's medical records and opined that Plaintiff could perform medium work in that she could occasionally lift or carry fifty pounds; frequently lift or carry twenty-five pounds; stand, walk or sit for six hours in an eight-hour day; and had unlimited ability to push and pull. Finally,

---

[6]    Medium work involves lifting between 25 and 50 pounds. SSR 83-10, 1983 WL 31251, at *6 (stating that "[t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds").

she stated that Plaintiff had no manipulative, visual, or communicative limitations. Dr. Muckerman-McCall found that due to her morbid obesity and diabetes, Plaintiff should only occasionally climb ladders, ropes, and scaffolds and restricted her to no more than frequent balancing, stooping, kneeling, crawling and crouching. She further found that due to Plaintiff's hypertension and history of CMV pneumonia, she should avoid concentrated exposure to fumes odors, dust, etc. Citing, Dr. Silvermintz's medical evaluation report, Dr. Muckerman-McCall further opined that Plaintiff was "not credible in her allegations" concerning the limiting effects of her alleged impairments. (Tr. 476)

### D. Dr. Toll's Opinion (Tr. 444-54)

Dr. Marsha Toll, Psy.D., a State medical consultant, conducted a psychiatric review technique to assess Plaintiff's alleged mental impairments. She found that Plaintiff had non-severe medical impairments, but suffered from an affective disorder, specifically, depressive syndrome, characterized by anhedonia, sleep disturbance, decreased energy, and feelings of guilt and worthlessness. Dr. Toll found that Plaintiff had mild restriction of her activities of daily living and mild difficulty in maintaining concentration, persistence, or pace, but no difficulty in social functioning and no repeated periods of decompensation. Dr. Toll also found no evidence of Paragraph C criteria. Dr. Toll observed that Plaintiff took medication for depression, but had not ever sought or maintained psychiatric or psychological counseling. Dr. Toll opined that although Plaintiff's allegations were consistent with her diagnosis, her symptoms were no more than mild, did not interfere with daily functioning, and resulted in only non-severe impairment.

### E. Dr. Mades' Opinion (Tr. 414-19)

Dr. Mades, a State consulting psychologist, examined Plaintiff with regard to her alleged mental impairments and issued a report in April of 2009. Dr. Mades made a diagnosis of major depressive disorder, single episode, in partial remission on medication; and assigned a GAF of

65.[7]  Dr. Mades opined that Plaintiff's prognosis was fair, with appropriate intervention, and noted that Plaintiff would likely benefit from psychiatric treatment and counseling.

## VI. Cooperative Disability Investigation ("CDI") (Tr. 256-67)

At some point during the Disability Review, the Missouri Disability Determination Section ("DDS") requested that the Commissioner's Office of Inspector General ("OIG") commence an investigation of Plaintiff.  In July of 2009, Diane Stowe, a Special Agent of the OIG, followed and observed Plaintiff as part of this investigation.  Agent Stowe reported that Plaintiff had driven herself to a doctor's appointment; walked at a consistent pace without any difficulty and, without the need for an assistive device, entered the driver's side of her vehicle in a fluid motion; shopped for groceries while pushing a cart and holding various items with her hands; and placed several bags of groceries in her car after she finished her shopping.  (Tr. 260)  Agent Stowe also observed that despite the warm summer temperatures at the time of her observation, Plaintiff did not appear to be short of breath or to exhibit any observable breathing difficulties while completing the above activities.  (Tr. 261)

## VII. The ALJ's Decision (Tr. 17-27)

The ALJ noted that the October 15, 1996 CPD, the most recent decision finding Plaintiff disabled, stated that Plaintiff had the medically determinable impairment of lung disease, which met Listing 3.02B of 20 C.F.R. 404.1520.  The ALJ also determined that Plaintiff had not engaged in substantial gainful activity from time of the CPD through July 15, 2009, the date on which her disability ended.  (Tr. 19)  Noting that the Appeals Council found no fault with the medical evidence as discussed in her earlier February 23, 2011 decision, the ALJ adopted and

---

[7]   The Global Assessment of Functioning Scale ("GAF") is a psychological assessment tool wherein an examiner considers "psychological, social and occupational functioning on a hypothetical continuum of mental health-illness;" it does "not include impairment in functioning due to physical (or environmental) limitations." *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV"), 32 (4th ed. 1994).  A GAF score between 61 and 70 indicates "some mild symptoms" or "some difficulty in social, occupational, or school functioning," but generally functioning pretty well, has some meaningful interpersonal relationships."

incorporated the medical evidence as set forth in that decision.

With respect to Plaintiff's alleged pulmonary impairment, the ALJ determined that the July 13, 2009 PFT showed results consistent with a diagnosis for obstructive pulmonary disease. However, the ALJ also observed that the July 2009 PFT results were well above the limits for FEV and FVC to meet or equal the Listing for an individual of Plaintiff's height. (Tr. 22) The ALJ further determined that, due to the improvement evidenced by the July 13, 2009 PFT, and the lack of need for medical care related to the pulmonary impairment, Plaintiff no longer met or medically equaled the severity requirements of Listing 3.02.

The ALJ not only determined that Plaintiff's lung disease no longer met or equaled the severity requirements of Listing 3.02B, but also concluded that the record failed to support a finding of disabling limitation related to her pulmonary status. (Tr.19-20) Specifically, in addition to the lack of need for frequent trips to the emergency room or for inpatient care, the ALJ cited Plaintiff's consistently normal chest and lung examinations in her determination that Plaintiff's medical improvement affected her ability to work. (Id.)

The ALJ then found that, in addition to her pulmonary impairment, Plaintiff also continued to have the medically determinable impairments of diabetes, obesity, hypertension, and depression. She assessed each of these impairments for severity and determined that none of these impairments had resulted in complications or a significant limitation of Plaintiff's capabilities. She then concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. (Tr. 20-21)

The ALJ further concluded that in light of the improved PFT results and other evidence of record, including the fact that Plaintiff had not required frequent emergency room or inpatient care since that time, Plaintiff's medical improvement had occurred as of July 15, 2009. (Tr. 21-22) The ALJ also determined that the Plaintiff's improvement was related to the ability to work,

because Plaintiff's pulmonary function measurements had improved to the extent that it exceeded the Listing's definition of disability. The ALJ next concluded that none of Plaintiff's other impairments, singly or in combination, met or medically equaled the severity of a listed impairment. (Tr. 22)

The ALJ then considered Plaintiff's functional restrictions, if any, as related to her alleged mental impairment. (Tr. 22-23) The ALJ found Plaintiff without restriction in her activities of daily living and social functioning. She further found that Plaintiff had some restriction with respect to pacing, stating that there would be "some decrease." (Tr. 23) The ALJ further determined that neither Paragraph B nor paragraph C criteria would be met in Plaintiff's case.

The ALJ then determined that as of July 15, 2009, Plaintiff had the RFC to perform a range of light work[8] and to understand, remember, and carry out at least simple instructions and non-detailed tasks. (Tr.23) The ALJ explained that her RFC determination was based upon "all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 24) The ALJ then concluded that Plaintiff's medically determinable impairments could reasonably have been expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC determination. (Tr. 24) The ALJ based her credibility determination on the relative lack of clinically significant findings on examination, and Plaintiff's failure to seek ongoing treatment for her mental and emotional problems. (Id.) In addition, the ALJ found

---

[8]     Thus the ALJ found that Plaintiff could lift no more than twenty pounds at a time; frequently lift or carry up to ten pounds; sit most of the time, with some pushing or pulling of arm or leg controls; or stand and walk, off and on, for a total of approximately six hours of the workday while sitting intermittently the remaining time; stoop occasionally; and grasp, hold, and turn objects. (Tr. 23); see SSR 83-10, 1983 WL 31251, at *5-*6 (defining light work).

Plaintiff's testimony regarding her activities of daily living, such as driving, shopping, managing her finances, caring for a pet, preparing meals, and doing laundry and other household chores, inconsistent with an RFC indicating disability.  (Tr. 23-24)

With respect to medical opinion evidence, the ALJ placed no weight on the opinion of Plaintiff's treating physician, Dr. Wiedner, characterizing it as an opinion related to the application of SSA regulations, a task reserved to the discretion of the Commissioner.  In addition, the ALJ noted that Dr. Wiedner's opinion failed to quantify the manner in which Plaintiff's alleged impairments impeded her ability to function and that his opinion also was inconsistent with the routinely normal, objective medical findings he recorded when examining Plaintiff.  (Tr. 25)  The ALJ afforded some weight to the opinions of the consulting medical examiners who had determined that Plaintiff was capable of even greater exertion than indicated by the ALJ's RFC.  (Id.)

The ALJ next determined that, as of July 15, 2009, Plaintiff was unable to perform her past relevant work.  The ALJ then found that Plaintiff was a younger individual, with a high school education and the ability to communicate in English, and that transferability of skills was not an issue because Plaintiff's past relevant work was unskilled.  (Tr. 25-26)  Therefore, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, she would be able to perform one or more occupations available in significant numbers in the national economy.  (Tr. 25)  Relying on the testimony of the VE, the ALJ identified these occupations as housekeeping, mail clerk, and kitchen helper.  (Tr. 26)  The ALJ rejected the hypotheticals Plaintiff's counsel posed to the VE, stating that they lacked a basis in the record.

On the basis of these determinations, the ALJ concluded that Plaintiff's disability ended as of July 15, 2009.

**VIII. Standard of Review and Legal Framework**

Under 42 U.S.C. §405(g) and controlling Eighth Circuit case law, this Court reviews the final decision of the Commissioner to determine whether that decision is supported by substantial evidence on the record as a whole. See Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994). Substantial evidence, in turn, is "less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

Thus, the decision of the Commissioner may not be reversed solely because this Court might have decided the case differently. Id. at 1022. Instead, this Court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the Commissioner's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001).

Additionally, this Court will determine whether the Commissioner faithfully applied the eight step process described at 20 C.F.R. 404.1594 for determining whether Plaintiff continues to be disabled.

At step one of this process, the Commissioner must determine if the Plaintiff is engaging in substantial gainful activity. If the Plaintiff is performing substantial gainful activity, the Plaintiff is no longer disabled. (20 C.F.R. 404.1594(f)(1)).

At step two, the Commissioner must determine whether the Plaintiff has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). If the Plaintiff has such impairments, her disability continues. (20 C.F.R. 404.1594(f)(2)).

At step three, the Commissioner must determine whether medical improvement has

occurred.  (20 C.F.R. 404.1594(f)(3)).  Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs and/or laboratory findings.  (20 C.F.R. 404.1594(b)(1)).  If medical improvement has occurred, the analysis proceeds to the fourth step.  If not, the analysis proceeds to the fifth step.

At step four, the Commissioner must determine whether medical improvement is related to the ability to work.  (20 C.F.R. 404.1594(f)(4)).  Medical improvement is related to the ability to work if it results in an increase in the Plaintiff's capacity to perform basic work activities.  (20 C.F.R. 404.1594(b)(3)).  If medical improvement is not related to the Plaintiff's ability to work, the analysis proceeds to step five; if medical improvement is related to the Plaintiff's ability to do work, the analysis moves to step six.

If the Commissioner found at step 3 that there was no medical improvement, or found at step four that the medical improvement is not related to the ability to work, then at step five, the Commissioner considers whether any of the exceptions at 20 C.F.R. 404.1594(d) and (e) apply.  If none of them apply, the Plaintiff's disability will be found to continue.  If one of the first group of exceptions to medical improvement applies, the analysis proceeds to step six; if an exception from the second group of exceptions to medical improvement applies, the disability will be found to have ended.

At step six, the Commissioner must determine whether the Plaintiff's current impairments when considered in combination are "severe," in that they significantly limit the Plaintiff's ability to do basic work activities.  (20 C.F.R. 404.1594(f)(6)).  If all current impairments in combination do not significantly limit the Plaintiff's ability to do basic work activities, the Plaintiff is no longer disabled.  If they do, the analysis proceeds to the next step.

At step seven, the Commissioner must assess the Plaintiff's residual functional capacity based on the current impairments and determine if she can perform past relevant work.  (20

C.F.R. 404.1594(f)(7)). If the Plaintiff has the capacity to perform past relevant work, her disability has ended. If not, the analysis proceeds to the last step.

At the final step, the Commissioner must determine whether other work exists that the Plaintiff can perform, given her residual functional capacity and considering her age, education, and past work experience. (20 C.F.R. 404.1594(f)(8)). If the Plaintiff can perform other work, she is no longer disabled. If the Plaintiff cannot perform other work, her disability continues.

Although the Plaintiff generally continues to have the burden of proving disability, at the final step, a limited burden of going forward with the evidence shifts to the Commissioner. In order to support a finding that an individual is not disabled at this step, the Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the Plaintiff can do, given the Plaintiff's RFC, age, education, and work experience.

## IX. Discussion

### A. Sufficiency of the Medical Evidence to Determine RFC

Plaintiff first argues that the ALJ did not have sufficient evidence to assess her RFC, and that therefore, the Commissioner's decision is not supported by substantial evidence.

In assessing Plaintiff's RFC, the ALJ considered the medical opinion of Dr. Wiedner, Plaintiff's treating physician, and the opinions of the State agency reviewing physicians of record. (Tr. 25, 444-77, 486) The State agency physicians, including Drs. McGraw and Muckerman-McCall, opined in 2009 that Plaintiff could perform either the full range of medium work or a range of medium work that involved some postural and environmental limitations. (Tr. 452, 455-60, 469, 472-77) On the other hand, Dr. Wiedner opined in 2010 that Plaintiff was "medically disabled." (Tr. 486)

The ALJ afforded Dr. Wiedner's opinion no weight because it was inconsistent with his

own recorded findings on examining Plaintiff, failed to explain the connection between Plaintiff's impairments and her ability to work, and was an opinion on the ultimate issue of disability reserved to the Commissioner.  (Tr. 25)  These reasons for discounting Dr. Wiedner's opinion are sound and in accordance with the governing law**.**  See Papesh v. Colvin, 786 F.3d 1126, 1132-33 (8th Cir. 2015) ("the ALJ 'may discount or even disregard the opinion…where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions'"); Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007) (noting that the ultimate determination of disability is an administrative determination reserved to the Commissioner).

In addition, the ALJ appropriately considered and afforded some weight to the opinions of Drs. McGraw and Muckerman-McCall.  (Tr. 25); see Papesh, 786 F.3d. at 1133-34; see also 20 C.F.R. § 404.1527(e)(2)(i) (observing that "[s]tate agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation.  Therefore, [ALJs] must consider findings and other opinions of State agency [medical sources] as opinion evidence, except for the ultimate determination about whether [the claimant] [is] disabled").

Plaintiff contends that because the ALJ gave no weight to Dr. Wiedner's opinion and discounted the opinions of Drs. McGraw and Muckerman-McCall, the record did not contain sufficient evidence to permit the ALJ to determine her work-related limitations.  In essence, Plaintiff argues that, in the absence of these opinions, the ALJ lacked "some medical evidence" from which she could assess Plaintiff's RFC.

Plaintiff correctly asserts that the RFC must be supported by "at least some medical evidence."  Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir.2010) (internal quotation omitted).

Upon review of the record as a whole and the ALJ's opinion, however, the undersigned rejects Plaintiff's argument that the RFC assigned here lacked such support. Although the ALJ's RFC must be based upon "some medical evidence" there is no requirement that the RFC align with, or be based upon, a specific medical opinion of record. See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) (observing that "[t]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians"); Halverson v. Astrue, 600 F.3d 922, 933-34 (8th Cir. 2010) (holding that medical opinion evidence was not necessary to support the RFC where the "the ALJ considered the medical records, [the claimant's] statements, and other evidence in making the [RFC] determination") (internal quotation omitted); Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007) (holding that "even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner"). The ALJ is required to rely upon medical evidence, but not medical opinion evidence. See Martise, 641 F.3d at 927.

In this case, the ALJ considered the entire record, including objective medical findings, effectiveness of treatment, failure to seek treatment, daily activities, the medical source opinions, and evidence offered by the CDI investigator. (Tr. 19-25) This evidence not only supports the ALJ's determination that Plaintiff could perform the range of light work she identified, but is the type of evidence that the Commissioner's regulations direct the ALJ to consider in making an RFC determination. See Halverson, 600 F.3d at 933-34.

### B. The ALJ Appropriately Considered the Severity of Plaintiff's Alleged Pulmonary Impairment

Plaintiff also argues that the ALJ erred because she stated that the results of Plaintiff's July, 2009 PFT, although consistent with a diagnosis of obstructive pulmonary disease, failed to meet the previously recognized Listing, but did not indicate whether the pulmonary impairment was nonetheless severe or whether any limitations flowed from this impairment.

Defendant acknowledges, and the Court agrees, that the portions of the ALJ's decision addressing the severity of Plaintiff's alleged pulmonary impairment lack precision. For example, the ALJ stated at one point that Plaintiff's July, 2009 PFT results were consistent with obstructive pulmonary disease, (Tr. 19), and also stated that as of July 15, 2009, the Claimant continued to have a severe impairment. (Tr. 22) Although these statements might be read to suggest that Plaintiff's obstructive pulmonary impairment was severe, the Court agrees with Defendant's assertion that the decision, when read as a whole, provides that as of July 15, 2009, Plaintiff's obstructive pulmonary disease neither met the specified Listing nor qualified as a severe impairment. (Tr.19-20) See Wiese v. Astrue, 552 F.3d 728, 733-34 (8th Cir. 2009) (explaining that the court may look to the entirety of the ALJ's decision to determine if the ALJ properly considered the claimant's claim); Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004)) (stating that reviewing courts should refrain from " set[ting] aside an administrative finding based on an 'arguable deficiency in opinion-writing technique' when it is unlikely it affected the outcome") (quoting Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996)).

The ALJ identified diabetes, obesity, hypertension, and depression as medically determinable severe impairments, and assessed Plaintiff's limitations, if any, related to these impairments. She did not, at that point in her opinion, make reference to obstructive lung disease as one of Plaintiff's medically determinable impairments or assess its severity. (Tr. 19, 22) However, consideration of the entire opinion reveals that earlier in her opinion the ALJ took into account Plaintiff's claims of shortness of breath and other possible functional limitations related to pulmonary impairment. (Tr. 19-20) As noted above, the objective medical findings of Plaintiff's treating physician, the opinions of the consultative examiners and the observations of the CDI investigator, all of which were noted in the ALJ's opinion, contradict Plaintiff's allegations of pulmonary symptoms or breathing difficulty. (See Tr. 19-20, 261, 506-7, 535-6,

554, 578-9, 621-2, and 627-8)  Therefore, although the ALJ's decision regarding the severity of Plaintiff's pulmonary impairments could have been more clearly articulated, the entirety of the decision demonstrates not only that Plaintiff's pulmonary impairment had improved, but also that it was not a severe impairment.

*C. The ALJ Appropriately Identified Plaintiff's Functional Limitations and Considered her Work-Related Abilities in Assessing RFC.*

Finally, Plaintiff argues that the ALJ committed reversible error by failing to undertake a function-by-function analysis as part of her RFC determination.  In support of her position, Plaintiff relies on <u>Pfitzner v. Apfel</u>, 169 F.3d 566, 568 (8th Cir. 1999), where the Eighth Circuit affirmed the reversal of an ALJ's decision finding a plaintiff not disabled because he had the RFC to return to his past relevant work.  Plaintiff asserts that the reversal was grounded on the ALJ's failure to conduct a function-by-function assessment of the plaintiff's work-related abilities.  However, the gravamen of the error in <u>Pfitzner</u> was the failure to make findings and to "specify the details" of the plaintiff's RFC.  <u>Id.</u>; <u>see also</u> <u>Depover v. Barnhart</u>, 349 F.3d 563, 567 (8th Cir. 2003).

Here, however, the ALJ did not simply describe the RFC in "general terms."  <u>Id.</u>  She made findings regarding Plaintiff's ability to function in social and work settings, her ability to concentrate and work at a certain pace and, "although it would have been preferable if [s]he had made specific findings as to sitting, standing, and walking, [the undersigned] does not believe that [the ALJ] overlooked those functions."  <u>Id.</u>  Here, as in <u>Depover</u> the ALJ "implicitly found" that Plaintiff was not limited in these areas.  <u>Id.</u>

Plaintiff correctly asserts that the ALJ has some obligation to "'identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis,'" as required under Social Security Ruling 96–8p.  <u>See</u>, SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial

Claims, 1996 WL 374184, at *1 and *5.  These elements comprise the required "narrative discussion" or "narrative bridge."  Id.  Apart from these requirements, SSR 96-8p imposes no other content or format requirements.  See Garrison v. Astrue, No. 4:11CV1503 FRB, 2012 WL 4336202, at *15 (E.D. Mo. Sep. 21, 2012) (noting that neither the Eighth Circuit nor SSR 96-8p requires that the RFC be presented in "rigid" or "bullet-point format with each limitation immediately followed by a discussion of the supporting evidence") (citing Depover, 349 F.3d at 567).

The undersigned is satisfied that this is not a case where the ALJ failed to satisfy the requirements.  Instead, as discussed above, the ALJ conducted a detailed analysis of all of the objective evidence of record and of Plaintiff's testimony, and formulated an RFC that took into account those limitations that the ALJ found credible and supported by the record.  (Tr. 22-23)  It is apparent that the ALJ's RFC determination was made following a full examination of the record, and it does not appear that the ALJ overlooked any of Plaintiff's limitations.  In fact, the ALJ found Plaintiff somewhat more restricted with respect to sitting, standing, walking, and lifting than the consultative examiners did.  While the ALJ did not present her RFC findings in bullet-point format with each limitation immediately followed by a discussion of the supporting evidence, such a rigid format is not, as Plaintiff suggests, required by the Eighth Circuit or by the Social Security Rulings.  See Garrison, 2012 WL 4336202, at *15 (citation omitted).

Having reviewed the decision and the record, the undersigned is satisfied that the objective medical findings, Plaintiff's daily activities, and the credible medical source opinions, coupled with Plaintiff's failure to seek additional medical treatment for her impairments provide substantial evidence to support the ALJ's RFC determination and do so in a manner that comports with the requirements of SSR 96-8p.  (Tr. 19-25)  Moreover, "deficienc[ies] in opinion-writing" which have "no practical effect on the outcome" of a case are not grounds for

remand much less than reversal.  Draper v. Barnhart, 425 F.3d 1127, 1130 (8th Cir. 2005).

## X. Conclusion

Therefore, for all of the foregoing reasons, the undersigned concludes that ALJ's determination that Plaintiff is "no longer disabled" is consistent with the Commissioner's regulations and supported by substantial evidence on the record as a whole.  Although Plaintiff articulates a rationale for reaching a different conclusion, the ALJ's decision and therefore, the Commissioner's, is within the "zone of choice" and the undersigned recommends that it be affirmed.  Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011) (stating that "'[a]n ALJ's decision is not outside the zone of choice simply because [the court] might have reached a different conclusion had [the court] been the initial finder of fact'") (quoting Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008)).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the final decision of the Commissioner finding Plaintiff no longer disabled be **AFFIRMED**.  (ECF No.1).

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356, 357-358 (8th Cir. 1990).

/s/ John M. Bodenhausen
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of August, 2015.